UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

Michael Burns,

                                    Plaintiff,                    **COMPLAINT**

          -against-                                          Civil Action No.

Nurnberger Corporation d/b/a Nurnberger Bierhaus, Kelly
Enterprises of Staten Island, LLC, and Robert Kelly,

                                    Defendants.

-------------------------------------------------------------------X

      Plaintiff Michael Burns (née Lufrano), by and through his attorneys, Levy Ratner, P.C.,

alleges as follows against Defendants Nurnberger Corporation d/b/a Nurnberger Bierhaus

("Nurnberger Corporation"), Kelly Enterprises of Staten Island, LLC ("Kelly Enterprises"), and

Robert Kelly:

## NATURE OF ACTION

1.     This is an action to address employment and labor law violations perpetrated by

Defendants against Plaintiff.

2.     In violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and

New York State Labor Law § 190 et seq., and §652 ("NYLL"), Defendants failed to pay Plaintiff

a minimum wage for the hours he worked for Defendants and overtime premiums for the hours

he worked in excess of 40 hours per week, violated recordkeeping provisions of state law, and

violated anti-retaliation provisions under FLSA and state law.

3.     Plaintiff now brings this action for unpaid wages, minimum wage violations, unpaid

overtime premiums, and other violations of federal and state law.

## IDENTIFICATION OF THE PARTIES

4.      Plaintiff Michael Burns resides at 6 New Lane, Apt. # 2B, Staten Island, New York 10305, within the jurisdiction of this Court. Burns worked as a chef for Defendants' restaurant, Nurnberger Bierhaus.

5.      At all times relevant to this action, Plaintiff was Defendants' "employee" within the meaning of FLSA and NYLL.

6.      Defendant Robert Kelly hired Plaintiff, set Plaintiff's work schedule, supervised Plaintiff's work, maintained Plaintiff's employment records, and oversaw payroll and was responsible for ensuring that Plaintiff received his salary.

7.      During all times relevant to this action, Defendant Kelly was Plaintiff's "employer" within the meaning of FLSA and the NYLL.

8.      Defendant Nurnberger Corporation is a corporation duly registered with the New York State Department of State. It maintains its principal place of business at 817 Castleton Avenue, Staten Island, NY 10310. According to the New York State Department of State, Nurnberger Corporation has been an active Domestic Business Corporation since April 18, 2005, and its Chief Executive Officer is Defendant Kelly.

9.      Defendant Nurnberger Corporation hired Plaintiff, set Plaintiff's work schedule, supervised Plaintiff's work, maintained Plaintiff's employment records, and oversaw payroll and was responsible for ensuring that Plaintiff received his salary.

10.  During all times relevant to this action, Defendant Nurnberger Corporation was Plaintiff's "employer" within the meaning of FLSA and the NYLL.

11.  Defendant Kelly Enterprises is a domestic limited liability company. It maintains its principal place of business at 817 Castleton Avenue, Staten Island NY 10310. According to the New York State Department of State, Kelly Enterprises of Staten Island, LLC, has been an active Domestic Limited Liability Company since February 26, 2014. Upon information and belief, Kelly Enterprises of Staten Island, LLC, is owned and operated by Defendant Kelly.

12.  Upon information and belief, Defendant Kelly Enterprises hired Plaintiff, set Plaintiff's work schedule, supervised Plaintiff's work, maintained Plaintiff's employment records, and oversaw payroll and was responsible for ensuring that Plaintiff received his salary.

13.  During all times relevant to this action, Defendant Kelly Enterprises was Plaintiff's "employer" within the meaning of FLSA and the NYLL.

## JURISDICTION AND VENUE

14.  This Court has subject matter jurisdiction based upon 28 U.S.C. § 1331 and 29 U.S.C. § 216(b). This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

15.  Defendants maintain principal places of business in Richmond County where all of the events or omissions giving rise to Plaintiff's claims occurred, and venue is therefore appropriate in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF THE FACTS

16.     Originally from Kleve, Germany, Michael Burns came to the United States in 2012 and began working as a chef at Nurnberger Bierhaus (the "Restaurant"), a Bavarian restaurant in Staten Island, New York that is owned and operated by Defendant Kelly. Mr. Burns' duties as chef included food preparation, quality control, and designing menu items. Defendant Kelly supervised Mr. Burns' work.

17.     Defendant Kelly sponsored Mr. Burns' J-1 visa, which enabled Plaintiff to work at the Restaurant as part of the U.S. Government's Exchange Visitor Program from April 2011 to March 2012.

18.     During this time, Mr. Burns typically worked 50 to 55 hours per week and was paid 15 dollars an hour.

19.     Mr. Burns should have received overtime compensation for all hours worked in excess of 40 hours per week. However, from April 2011 to March 2012, he only received such compensation sporadically.

20.     When Mr. Burns' J-1 visa expired, he returned to Germany and applied for an E-2 visa so that he could resume working at the Restaurant. Defendant Kelly sponsored and paid for Mr. Burns' E-2 visa.

21.     After receiving this new visa, Mr. Burns returned to the United States in November 2013 and began working as a chef at the Restaurant again.

22.     As before, Mr. Burns typically worked 50 to 55 hours per week and was initially paid 15 dollars per hour, with his salary eventually increasing to 17 dollars per hour.

23.     Defendant Kelly established Mr. Burns' working schedule and was thus aware that he was working between 10 to 15 hours per week in excess of 40 hours.

24.     From November 2013 to in or around December 2014, Defendant Kelly refused to pay Mr. Burns any overtime compensation for the 10 to 15 hours per week he worked in excess of 40 hours. Instead, Mr. Burns was paid straight time wages for all hours worked.

25.     Mr. Burns' paystubs reflect the fact that he worked 10 to 15 hours per week in excess of 40 hours and yet received straight time wages for all hours worked.

26.     Defendant Kelly knew that Mr. Burns was entitled to overtime compensation for any hours worked in excess of 40 hours per week as he had previously, sporadically paid him overtime compensation for the same job from April 2011 to March 2012.

27.     Moreover, in or around December 2014, Defendant Kelly resumed paying Mr. Burns overtime compensation for hours worked in excess of 40 hours per week, which he referred to as a "raise."

28.     At no point did Defendant Kelly explain why he had refused to pay Mr. Burns overtime compensation from November 2013 until in or around December 2014, despite having sporadically paid it to him previously.

29.     Defendant Kelly did not compensate Mr. Burns for the overtime hours that he had previously worked and for which he was not properly paid.

30.     Defendant Kelly also failed to properly compensate other workers at the Restaurant: workers in the Kitchen were paid off the books in cash, and waitresses and bartenders were paid irregularly.

31.     Sometime in or around 2015, Defendant Kelly, who maintained payroll records, stopped paying Mr. Burns on a weekly basis. Prior to that time period, Mr. Burns had typically been paid every Friday on a weekly basis.

32.     When Mr. Burns asked Defendant Kelly if he could start paying him on a weekly basis again or commit to paying him more regularly, Defendant Kelly threatened to deport him back to Germany and told him that he would have to return any money that Defendant Kelly had expended on sponsoring his E-2 visa.

33.     Sometime in or around July 2015, Defendant Kelly stopped paying Mr. Burns his salary. When Mr. Burns told Defendant Kelly that he would not come to work unless he received his wages, Defendant Kelly threatened him again with deportation and told him that he would have to pay Defendant money to cover Mr. Burns' E-2 visa costs.

34.     Defendant Kelly continued not to pay Mr. Burns any salary for approximately five weeks, even though he worked 50 to 55 hours per week.

35.     During this time, Defendant Kelly persisted in threatening Mr. Burns with deportation and the repayment of visa costs.

36.    Defendant Kelly's failure to pay Mr. Burns any wages for over a month coupled with his dogged harassment and threats led Mr. Burns to quit working as a chef at the Restaurant in or around September 2015.

37.    n response to this, Defendant Kelly threatened Mr. Burns again with deportation.

38.    Defendant Kelly also threatened Mr. Burns' wife and sister-in-law, both of whom worked at the Restaurant, telling them that he would deport Mr. Burns if he refused to return to work.

39.    Some weeks after Mr. Burns was forced to quit, he contacted Defendant Kelly hoping to obtain his final weeks of pay, but Defendant refused to pay him anything.

40.    Over one year later, Defendant Kelly still has not paid Plaintiff for his final weeks of work.

41.    After repeated attempts to obtain the wages owed him, Mr. Burns filed a complaint with the Wage and Hour Division ("WHD") of the U.S. Department of Labor, alleging minimum wage and overtime violations under FLSA.

42.    After investigating Mr. Burns' claims, the WHD concluded that Mr. Burns' employer had violated FLSA's minimum wage and overtime requirements.

43.    The WHD contacted Defendant Kelly to obtain unpaid minimum wages and overtime compensation totaling $7,005.52, which did not include liquidated damages.

44.    Defendant Kelly refused to pay the wages owed to Mr. Burns.

45.     On September 21, 2016, the WHD issued a letter to Mr. Burns detailing FLSA's wage requirements, the employer's refusal to voluntarily pay Mr. Burns the wages owed to him, and available courses of action should Mr. Burns wish to pursue his claims further. (*See* WHD Ltr., Ex 1 to Compl.)

## COUNT ONE

**FLSA Overtime Claim**
**29 U.S.C. § 201, et seq.**

46.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows:

47.     At all relevant times, Defendants were "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants employed Plaintiff as their "employee." Upon information and belief, at all relevant times, Defendants have had gross operating revenues, either individually or jointly, of not less than $500,000.

48.     FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees at the rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek.

49.     Plaintiff is entitled to overtime compensation for all overtime hours worked for which he was not compensated.

50.     From November 2013 to in or around December 2014, Plaintiff regularly worked in excess of forty hours in a week and was not paid overtime rates for work performed.

51.     Defendants knew that Plaintiff worked on average 10 to 15 hours in excess of 40 hours per week and that Plaintiff was therefore entitled to overtime compensation. However, Defendants refused to compensate Plaintiff adequately for this time.

52.     By failing to compensate Plaintiff at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendants violated FLSA, 29 U.S.C. § 201, et seq., including § 207(a)(1).

53.     As a result of Defendants' acts, Plaintiff has suffered damages no less than the difference between the amount he was paid and the overtime rate of the higher of one and one half times his regular rate of pay or one and one half times the statutory hourly minimum wage for all hours of work in excess of forty (40) hours in a single week.

54.     Defendants' violations have at all relevant times been willful because, among other reasons, they showed reckless disregard for Plaintiff's status as a nonexempt employee insofar as they possessed actual knowledge of Plaintiff working overtime hours for which he was not adequately compensated.  Defendants established Plaintiff's working schedule, knew that he was working between 10 to 15 hours of overtime per week, and nonetheless refused to compensate him appropriately.

55.     As a direct and proximate result of Defendants' unlawful acts, Plaintiff has been deprived of overtime compensation in an amount to be determined at trial, and is entitled to recover damages in the amount of unpaid overtime compensation for three years prior to the filing of this Complaint, interest, liquidated damages, and attorneys' fees and costs, as provided

by FLSA, 29 U.S.C. §§ 216(b) and 255, and such other legal and equitable relief as the Court deems just and proper.

## COUNT TWO

### New York State Labor Law Overtime Claim
### 12 NYCRR 142-2.2

56.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows:

57.     At all relevant times, Defendants were required to pay Plaintiff overtime compensation at a rate of one and one-half (1½) times his regular rate of pay for hours worked in excess of forty in any workweek. *See* 12 NYCRR 142-2.2.

58.     At all relevant times, Plaintiff regularly worked in excess of forty hours in a workweek.  The precise number of overtime hours will be proven at trial.  Despite the hours worked by Plaintiff, Defendants willfully and in knowing violation of New York Labor Law and its enacting regulations, failed and refused to compensate Plaintiff for all of the overtime wages earned.

59.     By failing to compensate Plaintiff at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, Defendants violated 12 NYCRR 142-2.2.

60.     As a result of Defendants' acts, Plaintiff has suffered damages no less than the difference between the amount he was paid and the overtime rate of the higher of one and one

half times his regular rate of pay or one and one half times the statutory hourly minimum wage for all hours of work in excess of forty hours in a single week.

61. Defendants' violations have at all relevant times been willful because, among other reasons, Defendants recklessly disregarded Plaintiff's position as a nonexempt employee, and Defendants had actual knowledge of Plaintiff working overtime hours for which he was not adequately compensated. Defendants established Plaintiff's working schedule, knew that he was working between 10 to 15 hours of overtime per week, and nonetheless refused to compensate him appropriately.

62. As a direct and proximate result of Defendants' unlawful acts, Plaintiff has been deprived of overtime compensation in an amount to be determined at trial, and is entitled to recover damages in the amount of unpaid overtime compensation for all periods of time of his employment up to six years prior to the filing of this Complaint, plus interest, liquidated damages, and attorneys' fees and costs, as provided by the N.Y. Lab. Law § 198, and such other legal and equitable relief as the Court deems just and proper.

## COUNT THREE

**FLSA Minimum Wage Claim**
**29 U.S.C. § 201, et seq.**

63. The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows:

64. Section 6 of FLSA, 29 U.S.C. § 206, requires that a minimum wage be paid for all hours worked.

65. At all relevant times, FLSA has required that an employee engaged in commerce be paid no less than $7.25 per hour. Where an employee is subject to both state and federal minimum wage laws, the employee is entitled to the higher rate.

66. Plaintiff performed work for the Defendants but was paid less than $7.25 per hour. Indeed, Plaintiff was paid nothing for the work that he performed during his final weeks at the Restaurant.

67. By failing to compensate Plaintiff at a rate of not less than $7.25 per hour, Defendants violated FLSA, 29 U.S.C. § 201, et seq., including § 206.

68. As a result of Defendants' acts, Plaintiff has suffered damages no less than the difference between his regular rate of pay and $7.25 per hour for every hour worked.

69. Defendants' violations have at all relevant times been willful because, among other reasons, Defendants acted in reckless disregard of the applicable provisions of FLSA and Department of Labor regulations, and Defendants had actual knowledge of Plaintiff working at a rate below $7.25 per hour.

70. As a direct and proximate result of Defendants' unlawful acts, Plaintiff has been deprived of compensation in an amount to be determined at trial, and is entitled to recover damages in the amount of unpaid wage compensation for the three years prior to the filing of this Complaint, as well as interest, liquidated damages, and attorneys' fees and costs, as provided by FLSA, 29 U.S.C. §§ 216(b) and 255, and such other legal and equitable relief as the Court deems just and proper.

## COUNT FOUR

### New York State Labor Law Minimum Wage Claim
### N.Y. Lab. Law § 652

71.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows:

72.     NYLL § 652 requires that a minimum wage be paid for all hours worked.

73.     12 NYCRR 142.2.1 requires that an employee engaged in commerce be paid an hourly rate of no less than $8.75 per hour on or after December 31, 2014.

74.     Plaintiff performed work for Defendants but was paid less than the applicable minimum hourly wage rate under New York State Labor Law and its enacting regulations. Indeed, from July 2015 to in or around September 2015, Plaintiff was paid nothing for his work.

75.     By failing to compensate Plaintiff at a rate of not less than the applicable minimum hourly wage rate under New York State Labor Law and its enacting regulations, Defendants violated those provisions.

76.     As a result of Defendants' acts, Plaintiff has suffered damages no less than the difference between Plaintiff's regular rate of pay and the applicable hourly minimum wage rate under New York State Labor law and its enacting regulations for every hour worked.

77.     Defendants' violations have at all relevant times been willful because, among other reasons, Defendants acted in reckless disregard of the applicable provisions of New York State Labor Law and its enacting regulations insofar as Defendants had actual knowledge of

Plaintiff working at a rate below the applicable New York State minimum hourly wage rate, seeing that Defendants actively withheld all of Plaintiff's wages for several weeks.

78.     As a direct and proximate result of Defendants' unlawful acts, Plaintiff has been deprived of compensation in an amount to be determined at trial, and is entitled to recover damages in the amount of unpaid wage compensation for all periods of time of his employment up to six years prior to the filing of this Complaint, plus interest, liquidated damages, and attorneys' fees and costs, as provided by NYLL § 198, and such other legal and equitable relief as the Court deems just and proper.

## COUNT FIVE

### FLSA Anti-Retaliation Claim
### 29 U.S.C. § 201, et seq.

79.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows:

80.     Section 215(a)(3) of FLSA states in relevant part that it shall be unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."

81.     Plaintiff performed work for Defendants for which he was not properly compensated and on numerous occasions asked Defendants to provide adequate compensation. In response to these requests, Defendants threatened Plaintiff with deportation, told him that he had to pay Defendants any money expended in relation to securing Plaintiff's E-2 visa, and

refused to pay him further wages. After five weeks of threatening Plaintiff and refusing to pay him any compensation for his work, Plaintiff was forced to quit his job as a chef at the Restaurant.

82.     Defendants' withholding of Plaintiff's wages, threats and harassment, and constructive discharge of Plaintiff in response to Plaintiff's requests to be paid his wages violate FLSA's anti-retaliation provision.

83.     Accordingly, Plaintiff seeks lost wages, liquidated damages, compensatory damages for emotional distress, punitive damages, and attorneys' fees and costs as provided by FLSA, 29 U.S.C. §§ 216(b) and 255, and such other legal and equitable relief as the Court deems just and proper.

## COUNT SIX

**New York State Labor Law Anti-Retaliation Claim**
**N.Y. Lab. Law § 215**

84.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows:

85.     NYLL § 215(a)(1) states in relevant part that "[n]o employer or his or her agent, or the officer or agent of any corporation, partnership, or limited liability company, or any other person, shall discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee . . . because such employee has made a complaint to his or her employer."

86.     Plaintiff performed work for Defendants for which he was not properly compensated and on numerous occasions asked Defendants to provide adequate compensation.

In response to these requests, Defendants threatened Plaintiff with deportation, told him that he had to pay Defendants any money expended in relation to securing Plaintiff's E-2 visa, and refused to pay him further wages. After five weeks of threatening Plaintiff and refusing to pay him any compensation for his work, Plaintiff was forced to quit his job as a chef at the Restaurant.

87.　　Defendants' withholding of Plaintiff's wages, threats and harassment, and constructive discharge of Plaintiff in response to Plaintiff's requests to be paid his wages violate the New York State Labor Law's anti-retaliation provision.

88.　　Accordingly, Plaintiff seeks lost wages, liquidated damages, compensatory damages for emotional distress, punitive damages, and costs and reasonable attorneys' fees as provided by NYLL § 215(2)(a), and such other legal and equitable relief as the Court deems just and proper.

## COUNT SEVEN

**New York State Labor Law Spread of Hours Claim**
**12 NYCRR 146-1.6**

89.　　The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows:

90.　　12 NYCRR 146-1.6 states that "[o]n each day on which the spread of hours exceeds 10, an employee shall receive one additional hour pay at the basis minimum hourly rate."

91.     From April 2011 to March 2012, Plaintiff worked more than ten hours per day six days per week, and from November 2013 to September 2015, Plaintiff worked more than ten hours per day at least five days per week. Despite working a spread of hours that exceeded 10 hours, Plaintiff never received an additional hour of pay.

92.     By failing to pay Plaintiff an additional hour of pay, Defendants violated 12 NYCRR 146-1.6. Accordingly, Plaintiff seeks damages, in an amount to be determined at trial, as provided by 12 NYCCR 146-1.6.

## COUNT EIGHT

**New York State Labor Law Wage Statement and Record Keeping Claims**
**N.Y. Lab. Law § 195**

93.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows:

94.     N.Y. Lab. Law § 195(3) provides, in pertinent part, that every employer shall:

> furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate. Upon the request of an employee, an employer shall furnish an explanation in writing of how such wages were computed;

95.     From approximately July 2015 to in or around September 2015, Defendants failed to provide Plaintiff with statutorily required wage statements as provided for in N.Y. Lab. Law § 195.

96.     From approximately July 2015 to in or around September 2015, Defendants failed to make complete and timely payment of any and all wages to Plaintiff.

97.     By their actions, Defendants have violated the New York State Labor Law and its enacting regulations, by failing to provide Plaintiff with statutorily required wage statements.

98.     As a direct and proximate result of Defendants' unlawful acts, Plaintiff has suffered damages in the amount of two-hundred and fifty dollars ($250) for each workday on which the violations occurred, not to exceed a total of five thousand dollars ($5,000), together with costs and reasonable attorneys' fees, *see* N.Y. Lab. Law § 198(1-d), and such other legal and equitable relief as the Court deems just and proper.

## COUNT NINE

### Unjust Enrichment

99.     The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows.

100.    Defendants have enriched themselves as a result of withholding money owed to Plaintiff.

101.    The enrichment was at Plaintiff's expense because Plaintiff would have received the money owed him had Defendants not intentionally and willfully withheld his wages in violation of federal and state law.

102.    The circumstances are such that equity and good conscience requires Defendants to pay Plaintiff for all the time he worked but was not paid according to federal and state law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be entered against Defendants as follows:

A.    that this Court assume jurisdiction over this action;

B.    that this Court enter judgment in favor of Plaintiff for monetary damages in the form of back pay for overtime compensation owed under FLSA and New York State Labor Law during the applicable periods of limitation as may be found by a jury and the Court;

C.    that this Court enter judgment in favor of Plaintiff for monetary damages in the form of back pay for unpaid minimum wages owed under FLSA and New York State Labor Law during the applicable periods of limitation as may be found by a jury and the Court;

D.    that this Court enter judgment in favor of Plaintiff for such amount as may be awarded by a jury and the Court for liquidated damages for Defendants' willful violation of FLSA and New York State Labor Law;

E.	that this Court award Plaintiff statutory damages under NYLL § 198 for failure to provide statutorily required wage statements;

F.	that this Court award Plaintiff statutory damages under 12 NYCRR 146-1.6 for failure to provide spread of hours compensation;

G.	that this Court award Plaintiff compensatory damages for emotional distress and punitive damages in regards to Defendants' violation of the anti-retaliation provisions of FLSA and New York State Labor Law;

H.	that this Court award Plaintiff all costs, expenses, and reasonable attorneys' fees associated with the prosecution of this civil action;

I.	that this Court enter judgment in favor of Plaintiff for such amount as may be awarded by a jury and the Court for Defendants' unjust enrichments.

J.	that this Court grant such additional or alternative relief as may appear to the Court to be just and proper.

## <u>JURY TRIAL DEMANDED</u>

103.	Plaintiff demands trial by jury for all issues in this action.

Dated: November 9, 2016
      New York, New York

LEVY RATNER, P.C.

By:    s/  Dana E. Lossia
         Dana E. Lossia
         *Attorneys for Michael Burns*
         80 Eighth Avenue
         New York, NY 10011
         (212) 627-8100
         (212) 627-8182 (fax)
         dlossia@levyratner.com