**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
MICHAEL BURNS,

                              Plaintiff,                    **REPORT AND RECOMMENDATION**

        -against-                                          **16-CV-6251 (WFK) (ST)**

NURNBERGER CORPORATION D/B/A
NURNBERGER BIERHAUS, KELLY
ENTERPRISES OF STATEN ISLAND, LLC,
and ROBERT KELLY,

                              Defendants.
-----------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

        Plaintiff initiated this action on November 10, 2016, alleging violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., the New York Labor Law § 195, § 215 & §

652, and the New York Codes, Rules and Regulations ("NYCRR"), 12 NYCRR 142-2.2, 146-1.6,

as well as unjust enrichment. *See* Compl. (Dkt. No. 1). He alleges that Defendants—Nurnberger

Corporation, Kelly Enterprises of Staten Island, LLC, and Robert Kelly—employed him for

various periods from April 2011 to September 2015 but, in the process, underpaid his wages and

threatened him with retaliation, among other labor law violations.

        Defendants have failed to answer or otherwise respond to the Complaint despite proper

service, and Plaintiff has now moved for default judgment, which the Honorable William F. Kuntz

has referred to this Court for a report and recommendation.

        Based on a review of the well-pleaded allegations and evidence presented in Plaintiff's

filings, I respectfully recommend entering judgment against Defendants and entering an award of

$55,790.36, comprised of: (1) $5,877.75 in unpaid straight and overtime wages for the summer of

2015; (2) $8,437.50 in unpaid overtime premium for April 2011 to March 2012 and for November

- 1 -

2013 to July 2014; (3) nothing in unpaid spread-of-hours compensation; (4) $5,000.00 in wage statement damages; (5) $12,240.00 in lost earnings; (6) $5,000.00 for emotional distress; (7) $5,000.00 in punitive damages; (8) and $14,235.11 in liquidated damages.

This Court also recommends awarding prejudgment interest on a principal amount of $14,315.25 accruing from June 25, 2013 until the day judgment is entered at the rate of 9% per year, as well as postjudgment interest calculated pursuant to 28 U.S.C. § 1961(a).

Finally, this Court also recommends awarding $35,852.50 in reasonable attorneys' fees and $2,446.46 in costs.

## BACKGROUND

Plaintiff Michael Burns came to the United States from Germany in 2012 and began working as a chef at Nurnberger Bierhaus, a Bavarian restaurant in Staten Island, New York that is owned and operated by Defendant Kelly. Compl. ¶ 16 (Dkt. No. 1).[1] Plaintiff's duties as chef included food preparation, quality control, and designing menu items. *Id.*

Defendant Kelly sponsored Plaintiff's visa, which enabled Plaintiff to work at the Restaurant as part of the U.S. Government's Exchange Visitor Program from April 2011 through April 2012. Burns. Decl. ¶¶ 2-3 (Dkt. No. 31). During that time, Plaintiff typically worked six days a week, 50-55 hours per week, for $15 per hour. Compl.  Compl. ¶ 18; Burns. Decl. ¶¶ 2-4. For all hours, including his overtime, he was paid at the rate of $15 per hour. Burns. Decl. ¶¶ 2-3, 7; Compl. ¶ 18.

---

[1] On a motion for default judgment, the Court is "required to accept all of [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). Thus, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997); *see also Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 189 (2d Cir. 2015) (affirming liability of defaulting defendant based upon "the factual allegations in the complaint, combined with uncontroverted documentary evidence submitted by plaintiff").

When Mr. Burns' visa expired, he returned to Germany and applied for an E-2 visa so that he could resume working at the Restaurant. Compl. ¶ 20. Defendant Kelly sponsored and paid for Mr. Burns' E-2 visa. *Id*.

After receiving this new visa, Mr. Burns returned to the United States m November 2013 and began working as a chef at the Restaurant again until September 2015. Compl. ¶¶ 21, 36. Like before, Mr. Burns typically worked 50 to 55 hours per week and was initially paid 15 dollars per hour, with his salary eventually increasing to 17 dollars per hour. Compl. ¶ 22. During this period, Defendants did not pay Mr. Burns any overtime until August of 2014. Burns Decl. ¶ 8.

Starting around November 2014, however, conditions at the Bierhaus began to deteriorate. Sometime around November, Mr. Burns told Mr. Kelly that he needed to go back to Germany for a vacation, and Mr. Kelly responded that he would deport Mr. Burns if he did so. Burns Decl. ¶ 7. Then, in the summer of 2015, Mr. Burns' payday became erratic, and eventually Defendants started to miss paydays entirely. Burns Decl. ¶ 9. Defendants also stopped providing Mr. Burns with a paystub in July 2015. *Id*. ¶ 11. When Mr. Burns said that he needed to be paid regularly, as promised, Mr. Kelly threatened to deport him again and to collect the visa costs. *Id*. ¶ 10.

Later, Mr. Burns informed Kelly that he would stop working unless he was paid, and Mr. Kelly came to Mr. Burns' house and threatened him with termination and deportation. *Id*. ¶ 12. He also threatened Mr. Burns' wife and sister-in-law, both of whom worked at the restaurant. Compl. ¶ 38.

In September 2015, things came to a head and Mr. Burns quit. Burns Decl. ¶ 14. In response, Mr. Kelly called his payroll vendor and told them to cancel the check for Mr. Burns' last week of work. Burns Decl. ¶ 15. In response, Mr. Burns contacted the U.S. Department of Labor, which eventually declined to litigate the matter itself. Burns Decl. ¶ 19.

Plaintiff then initiated this action in November 2016. Defendants failed to answer or otherwise appear in this action, and on June 26, 2017 the Honorable William F. Kuntz entered Judgment and referred this matter to this Court for a report and recommendation with respect to the total amount of unpaid wages, damages, costs and attorneys' fees owed to Plaintiff. Dkt. No. 26.

## DISCUSSION

The Federal Rules of Civil Procedure prescribe a two-step process for a plaintiff to obtain a default judgment. First, when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

Once a defendant is found to be in default, he is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, a court retains the discretion to determine whether a final default judgment is appropriate. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); *see also Taylor v. 312 Grand St. LLC*, 2016 WL 1122027, at *3 (E.D.N.Y. Mar. 22, 2016) ("[J]ust because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right.") (internal quotation marks and citations omitted). In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." *Enron*, 10 F.3d at 95-96.

Thus, despite a defendant's default, the plaintiff bears the burden of demonstrating that the unchallenged allegations and all reasonable inferences drawn from the evidence provided establish

- 4 -

the defendant's liability on each asserted cause of action. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). In other words, "after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (internal quotation marks and citations omitted), *adopted by*, 688 F. Supp. 2d 150, 151 (E.D.N.Y. 2010).

If liability is established as to a defaulting defendant, then the Court must conduct an analysis to establish damages to a "reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). When a defendant defaults in an FLSA action, the plaintiff's recollection and estimates of hours worked are presumed to be correct. *Lopez v. Yossi's Heimishe Bakery Inc.*, 2015 WL 1469619, at *3 (E.D.N.Y. Mar. 9, 2015) (citation omitted), *adopted by*, 2015 WL 1469619 (E.D.N.Y. Mar. 30, 2015).

## I. **Whether Defendants Defaulted.**

It is manifest from the record that Defendants have in fact defaulted. All Defendants were properly served by December 30, 2016. *See* Dkt. Nos 5-7, 9. Nevertheless, none had filed a response by January 17, 2017. Plaintiff then moved for an entry of default on April 20, 2017. *See* Dkt. No. 19.

Therefore, all three Defendants have in fact defaulted and this Court will move on to assess liability and any remedies owed to Plaintiff.

## II. **Whether this Court has Jurisdiction.**

For the reasons discussed below regarding the applicability of the FLSA to Defendants' employment of Plaintiff, this Court concludes that federal question jurisdiction exists for Plaintiff's

FLSA claims. *See* 28 U.S.C. § 1331. Therefore, this Court also concludes that the exercise of supplemental jurisdiction over Plaintiff's state law claims is appropriate. *See* 28 U.S.C. § 1367; *see also Yong Kui Chen v. Wai ? Café Inc.*, 2017 U.S. Dist. LEXIS 121635, at *7 (S.D.N.Y. Aug. 2, 2017) ("In wage and hour cases, 'typically, supplemental jurisdiction is appropriate for NYLL claims during the employment relationship because those claims arise from the same underlying factual basis as FLSA claims.") (quoting *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 393 (E.D.N.Y. 2007)) (alterations omitted).

**III.     Whether the FLSA applies to Plaintiff.**

**A.  Legal Standard.**

The FLSA governs minimum wages, maximum hours, and other policies and practices affecting employees and employers. *See Sandifer v. U.S. Steel Corp.*, 134 S.Ct. 870, 875 (2014). To demonstrate entitlement to the FLSA's wage and overtime protections, a plaintiff must show: (1) that the defendant employed plaintiff; and (2) that the employment fell under the FLSA's individual or enterprise coverage provisions. *See Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 96-97 (2d Cir. 2009) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 295 n.8 (1985)); *see also* 29 U.S.C. § 206(a)(1) (providing for minimum wage for qualifying employees); *id*. § 207(a)(1) (providing for overtime protection for qualifying employees).

To determine whether the defendant employed the plaintiff, there is "no rigid rule for the identification of an FLSA employer." *Teri v. Spinelli*, 980 F. Supp. 2d 366, 374 (E.D.N.Y. 2013) (citing *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)). Rather, the touchstone in determining whether an individual is an employer is "operational control" over employees, meaning whether the individual exercises control over and makes decisions that

"directly affect the nature or conditions of the employees' employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 110 (2d Cir. 2013).

Nevertheless, the Circuit has provided a "'nonexclusive and overlapping set of factors' to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Teri*, 980 F. Supp. 2d at 374-75 (citing *Barfield*, 537 F.3d at 143). Specifically, under the formal control test, the following factors are relevant to determine whether an individual-defendant employed the plaintiff: whether the defendant "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry*, 722 F.3d at 104-05 (2d Cir. 2013) (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)). [2] Despite these enumerated factors, however, a district court should consider any factor relevant to its assessment of the economic realities of an employer-employee relationship. *See Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 71-2 (2d Cir. 2003).

To fall under the FLSA's individual coverage provision, the employee's work must directly involve or relate to "the movement of persons or things . . . among the several States or between any State and any place outside thereof." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 354

---

[2] Another standard may be appropriate when "the facts demonstrate that the employee is jointly employed by more than one employer." *Keun-Jae Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (citation omitted). To address this scenario, the Second Circuit has also articulated a set of factors to determine whether the joint employers had functional control: "(1) whether the alleged joint employer's premises and equipment were used for the plaintiffs' work; (2) whether the original employer had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to the alleged joint employer's process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged joint employer or its agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the purported joint employer." *Teri*, 980 F. Supp. 2d at 374 n.13 (alterations omitted) (quoting *Ling Nan Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003)).

(E.D.N.Y. 2015) (quoting 29 C.F.R. § 779.103) (emphasis removed). To fall under enterprise coverage, the enterprise must have receipts greater than $500,000 and at least some employees must "handle, sell, or otherwise work on goods or materials that have been moved in or produced for" interstate commerce. *Id*. at 355 (quoting *Jones v. E. Brooklyn Security Services Corp*., 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012)).

### B.  Plaintiff's Employment is covered by the FLSA.

Plaintiffs' allegations are sufficient to show that he is entitled to the FLSA's protections. First, he alleges that each of the Defendants "set Plaintiff's work schedule, supervised Plaintiff's work, maintained Plaintiff's employment records, and oversaw payroll and was responsible for ensuring that Plaintiff received his salary." Compl. ¶¶ 6, 9, 12. That checks off all four boxes of the formal control factors. *See Irizarry*, 722 F.3d at 104-5. And although it verges on the conclusory, that is sufficient to allow this Court to find on a default judgment motion that Defendants employed Plaintiff under the FLSA's definition. *See Chuchuca v. Creative Customs Cabinets Inc.*, 2014 U.S. Dist. LEXIS 164846, at *19-20 (E.D.N.Y. Nov. 25, 2014) (finding that defendant was an employer when plaintiff alleged that the individual-defendant "controlled the terms and conditions of plaintiff's employment at both [businesses] for the entire period at issue").

Second, the "specific allegation that Defendants have an annual gross revenue in excess of $500,000.00, though somewhat conclusory, is sufficient to meet the pleading requirement under the FLSA." *Cardoza v. Mango King Farmers Mkt. Corp.*, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015), *adopted by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015) (citing *Gonzales v. Gan Israel Pre–Sch.,* 2014 WL 1011070, at *7 (E.D.N.Y. Mar.14, 2014)).

Third, and finally, although Plaintiff's complaint states only in a conclusory fashion that the Defendants sold goods that had traveled between states (*see* Compl. ¶ 47), this Court may

conclude based on the allegations in the Complaint that Defendants operated a restaurant that sold goods that had moved in interstate commerce. *See Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 33 (finding that it is "reasonable to infer that [a restaurant] requires a wide variety of materials to operate . . . [and] some of these materials moved or were produced in interstate commerce").

Thus, this Court concludes that the allegations in the Complaint—as admitted by Defendants' default—are sufficient for this Court to conclude that Defendants employed Plaintiff and that this employment fell under the FLSA's protections.

## IV.   Whether the NYLL Applies to Plaintiff.

As with the FLSA, the NYLL covers certain activities or practices affecting employers and employees. The NYLL defines an employer as a "person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." NYLL § 190(3). An employee is defined as "any person employed for hire by an employer in any employment." *Id.* § 190(2). Because this definition is similar to the FLSA's definition, "courts use the same tests to determine joint employment under both the NYLL and the FLSA." *Apple v. Atlantic Yards Dev. Co., LLC*, 2014 U.S. Dist. LEXIS 152053, at *18 n.4 (E.D.N.Y. Oct. 27, 2014) (citation omitted).

For the reasons discussed above regarding the applicability of the FLSA, this Court finds that Plaintiff's employment by Defendants falls under the NYLL's definition of employment. *See Mahoney v. Amekk Corp.*, 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (citation omitted) (concluding that the standards for defining employers are coextensive under the FLSA and the NYLL); *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003) (holding that the NYLL

and the FLSA "embody similar standards" with respect to the definition of "employer") (citation omitted).

### V.      Whether Plaintiff's Claims are Timely under the NYLL and FLSA's Statute of Limitations.

Plaintiff filed this action on November 9, 2016. *See* Compl. at 21. All of Plaintiff's claims under the NYLL are clearly timely as Plaintiff's employment began in April 2011 and the NYLL has a six-year statute of limitations. *See* NYLL § 663(3).

Whether his claims are timely under the FLSA, however, is a closer issue. The FLSA generally provides for a two-year statute of limitations for enforcement of its provisions. *See* 29 U.S.C. § 255(a). But this limitations period may be extended to three years upon a showing that an employer's violation of the FLSA was willful. *Id.* An employee bringing suit bears the burden of demonstrating that the violations were willful. *Porter v. New York Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004).

Thus, any FLSA claims for violations that occurred after November 2014 are timely regardless of Defendants' willfulness (*see* 29 U.S.C. § 255(a)), and any claims that accrued before November 2013 are untimely regardless of Defendants' willfulness, *see Acosta v. Yale Club*, 1995 U.S. Dist. LEXIS 14881, at *9 (S.D.N.Y. Oct. 5, 1995) (citation omitted) ("[U]nder the FLSA, a plaintiff cannot continue backward in time to challenge violations which occurred in pay periods outside the normal limitations period."). His claims that accrued from November 10, 2013 to November 9, 2014 are only timely under the FLSA if Defendants acted willfully.

This Court declines to decide whether the conduct was willful, however, as the entirety of Plaintiff's claims are timely under the NYLL and because the calculation of damages is the same whether or not Plaintiff's FLSA claims are timely. *Accord Chen v. Shanghai Tan Rest., Inc.*, 2017 U.S. Dist. LEXIS 36545, at *14 n.20 (E.D.N.Y. Mar. 13, 2017) (citation omitted) ("Because they

are not entitled to a duplicative recovery under both Acts, however, this question is irrelevant to the Court's analysis because under the NYLL's six-year limitations period plaintiffs may recover damages identical to those available under the FLSA."), *adopted by*, 2017 U.S. Dist. LEXIS 50104, at *1 (E.D.N.Y. Mar. 30, 2017). Thus, this Court concludes that Plaintiff's claims under the NYLL are timely, and will move on to assess liability and damages under that statute.

## VI.   Liability and Damages.

By defaulting, a defendant admits to all of the well-pleaded allegations concerning liability, but not those pertaining to damages. *Greyhound Exhibitgroup*, 973 F.2d at 158. As stated above, once liability is established as to a defaulting defendant, the plaintiff must still establish damages to a "reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155. Under Rule 55, the Court "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages [or] establish the truth of any allegation by evidence." Fed. R. Civ. P. 55(b)(2). However, a hearing is not required, as detailed affidavits and other documentary evidence can suffice. *Sun v. AAA Venture Capital, Inc.*, 2016 WL 5793198, at *3 (E.D.N.Y. Sept. 12, 2016) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991)), *adopted as modified by*, 2016 WL 5868579 (E.D.N.Y. Oct. 6, 2016). Here, the Complaint, Lossia Affidavit, and Burns Declaration, and other filings are sufficiently detailed and a hearing is not necessary.

Plaintiff requests remedies for: (1) unpaid wages and unjust enrichment arising out of work done in the Summer of 2015; (2) unpaid overtime wages for two time periods: April 2011 to March 2012 and November 2013 to July 2014; (3) unpaid spread-of-hours wages under the NYLL; (4) unlawful retaliation under the FLSA and NYLL; (5) wage statement and recordkeeping violations under the NYLL. Pl.'s Memo. at 3-13.

Plaintiff argues that altogether, these claims entitle him to: (1) either $4,998.75 in unpaid straight and overtime wages for the summer of 2015 or, in the alternative $2,828.75 in minimum and overtime wages; (2) $8,490.94 in unpaid overtime for April 2011 to March 2012, November 2013 to July 2014; (3) $5,897.92 in unpaid spread-of-hours compensation; (4) $5,000.00 in wage statement and record keeping damages; and (5) $32,983.75 in lost earnings, emotional distress, and punitive damages for the retaliation. Plaintiff also asks for unspecified amounts of liquidated damages as well as pre- and post-judgment interest. Finally, Plaintiff asks for over $45,000.00 in attorneys' fees and $4,000 in costs. For the reasons discussed below, this Court recommends somewhat modifying these requested amounts.

### A.  Unpaid Wages for the Summer of 2015.

Plaintiff alleges that he received absolutely no pay for 6.2 weeks of work in the summer of 2015. *See* Memo. at 3-6. Thus, he claims that he should be paid for 258 hours of straight time at the rate of $17 per hour and 77.5 hours of overtime at the rate of $25.50 per hour. This Court agrees that he is owed those rates, but disagrees in a few respects with his estimate of the hours worked.

Regarding the wage rate, this Court agrees that he is owed $17 per regular hour and $25.50 per hour of overtime. The pay statements show that this was the agreed upon wage between Defendants and Plaintiff at that time. *See* Dkt. No. 22-3. Thus, Plaintiff is owed that rate under the NYLL. *See Soto v. Armstrong Realty Mgmt. Corp.*, 2016 U.S. Dist. LEXIS 176740, at *4-5 (S.D.N.Y. Dec. 21, 2016) ("The NYLL provides . . . for a claim of straight time at a rate higher than the minimum wage if the parties previously agreed to the rate.") (citations omitted).

Regarding the calculation of time worked, this Court disagrees with Plaintiff's estimate in a few respects. First, this Court will not award overtime for the fraction of a week that Mr. Burns worked at the end of September. Mr. Burns claims that he is owed pay for 6.2 weeks for work

performed during the four weeks from 7/16/15 – 8/12/15, for the week of 8/27/15 – 9/2/15, and for the week and a day of 9/10/15 – 9/17/15. *See* Burns. Decl. ¶ 13.[3] Those dates add up to 43 days, or six weeks and a day. But the law only requires overtime when a person works in excess of 40 hours for a week (*see* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4), which Mr. Burns plainly did not do in that single day. Thus, Mr. Burns is entitled to straight and overtime for six weeks, but only straight time for the one lone day he worked at the end of September.

Second, Plaintiff estimates the number of hours he worked based off of weeks for which there are records. That is fine for most of the weeks, but we know how much money he was owed for his last paycheck that was cancelled: $756.50 for forty hours of regular time and three hours of overtime. *See* Dkt. No. 22-3 at 13. Plaintiff has not alleged that the cancelled paycheck was for less than the total number of hours he worked, therefore this court will use that record for one week of missed pay and will only estimate the pay for the other 36 days.

As for those days, Mr. Burns has sufficiently alleged and corroborated with payroll records that he worked on average 52.5 hours per week, or 7.5 hours per day, during this time period. *See* Memo. at 4; *see also* Dkt. No. 22-3.[4] Thus, for the five full weeks of work for which there are no records, this Court recommends awarding Mr. Burns 200 hours of regular pay and 62.5 hours of

---

[3] In his declaration, he says that he was not paid for work performed from 7/6/2015 – 8/12/2015. *See* Burns. Decl. ¶ 13. Clearly, this is a typo, as he was paid 7/13/2015 and 7/21/2015, and the memorandum of law correspondingly claims that the first gap in pay occurred for work performed from 7/16/2015 to 8/12/2015. *See* Memo. at 6; *see also* Dkt. No. 22-3 at 12.

[4] The payroll records account for 54 weeks from August 2014 to September 2015. *See* Dkt. No. 22-3. They show that during the 51 weeks that he worked a full work week, he worked a total of 2735.5 hours, for an average of 53.6 hours. Because the estimate of 52.5 hours is a concession against interest, this Court, accepts it as reasonable. *Accord Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("When a defendant defaults in an action brought under the FLSA, the plaintiff's recollection and estimates of hours worked are presumed to be correct.") (citations omitted).

overtime. For the lone day he worked at the end of September, this Court recommends awarding 7.5 hours of straight time.

Thus, this Court recommends awarding $756.50 based on the canceled paycheck for his last week of work; $3,527.50 in regular wages for the five weeks and a day for which there are no records;[5] and $1,593.75 in unpaid overtime for the five full weeks for which there are no records.[6] In total, Mr. Burns is owed a total of $5,877.75 in unpaid wages for the summer of 2015.

### B.   Unpaid Overtime Premium.

Under both the FLSA and NYLL, employees who work more than 40 hours in a single workweek are entitled to an overtime wage of not less than one-and-one-half times the regular rate for the excess hours. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.110(a); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) ("[T]he NYLL adopts . . . the FLSA definition of overtime into the NYLL.") (internal quotation marks and citation omitted).

Here, Plaintiff claims that he is owed overtime for the 52 weeks worked from April 2011 to March 2012, and for the 38 weeks and 4 days worked from November 2013 to July 29, 2014. *See* Burns. Decl. ¶¶ 2, 5. As discussed *supra*, he has adequately alleged and corroborated with payroll records that he worked on average 52.5 hours per week during that time. *See* Memo. at 4; *see also* Dkt. No. 22-3. He also has adequately alleged that during this time he was only paid $15 an hour for overtime, and not the full $22.50 that he was owed. *See* Burns. Decl. ¶ 7. But, as discussed *supra*, he cannot be owed overtime for the four days worked in the fractional workweek

---

[5] 207.5 * $17.00 = $3,527.50.

[6] 62.5 * $25.50 = $1,593.75.

given that he estimates that he did not work more than forty hours in those four days.[7] Thus, he can only recover overtime for the 38 full weeks he worked from November 2013 to July 29, 2014.

Thus, for this time period this Court recommends awarding Plaintiff unpaid overtime in the amount of $8,437.50.[8]

### C.  Unpaid Spread-of-Hours Compensation.

Plaintiff further alleges in the Complaint that Defendant unlawfully failed to provide spread-of-hours compensation as required by the NYLL. *See* Compl. ¶¶ 89-92; *see also* 12 N.Y.C.R.R. § 142-2.4 (requiring employers to pay employees who work more than ten hours in a day for one additional hour at the minimum statutory wage rate). He claims that he worked more than ten hours per day six days per week from April 2011 to March 2012 and that he worked more than ten hours per day five days per week from November 2013 to September 2015. *See* Compl. ¶ 91.

Plaintiff has failed, however, to prove that he is entitled to spread-of-hours compensation with reasonable certainty. Regarding the first period, his estimation of unpaid spread-of-hours plainly contradicts his own estimates of hours worked. He claims that from April 2011 to March 2012 he *usually* worked six days a week, and that he averaged 52.5 hours. *See* Burns. Decl. ¶ 2; Lossia Aff. Ex. 1 (estimating 12.5 hours of overtime worked during that period). Thus, by his own estimation, he typically averaged only 8.75 hours a day.[9] Certainly, these numbers are consistent with the possibility that he may have been owed spread-of-hours pay for some of the days from

---

[7] He estimates that he worked about 7.5 hours a day, suggesting that in those four days he only worked a total of thirty hours.

[8] $(38 + 52) * 12.5 * \$7.50 = \$8,437.50$.

[9] $52.5 / 6 = 8.75$.

April 2011 to March 2012, but it is simply inconsistent with the claim that he worked ten hours a day, six days a week, for that entire period.

The second period is not as plainly inconsistent, but it also lacks the requisite certainty of proof. Mr. Burns claims he worked typically five days a week, with an occasional sixth day, from November 2013 to September 2015, and that he worked 50-55 hours per week, averaging 52.5 hours during this period. *See* Burns. Decl. ¶ 4. This evidence is strongly suggestive that Mr. Burns is owed some spread-of-hours pay. But again, it is also inconsistent with the claim that he is owed spread of hours pay for five days a week, for every week from November 2013 to September 2015. For the period during which there are records, Mr. Burns never worked a total of 60 hours, and by his own admission he sometimes worked six days a week. Thus, for at least some of those weeks, it is unlikely that he worked ten hours a day for five days. This Court, therefore, cannot recommend concluding that he is owed spread-of-hours for a full five days for every week during this period.

Perhaps if Plaintiff had offered some estimate of the length of his typical shift, this Court could recommend awarding spread-of-hours pay. But Plaintiff has instead offered an estimate that is plainly inconsistent with the estimates of total hours worked, and so there is no way for this Court to determine with any certainty how many days he deserved to be paid for the spread-of-hours. *Accord Hui v. Shorty's Seafood Corp.*, 2017 U.S. Dist. LEXIS 145176, at *18-19 (E.D.N.Y. Sep. 6, 2017), *adopted by* 2017 U.S. Dist. LEXIS 182004, at *1 (E.D.N.Y. Oct. 30, 2017) (declining to award spread-of-hours when Plaintiff had only alleged that he had worked an average of ten hours per day).

### D.  Liquidated Damages.

Plaintiff requests that he be awarded liquidated damages under both the FLSA and the NYLL for periods of underpayment. *See* Pls.' Memo. at 14. This Court agrees that Plaintiff is entitled to liquidated damages, with a few caveats.

Under the FLSA, a district court is generally required to award liquidated damages in the amount of actual damages for unpaid minimum wage and overtime compensation unless the employer can show that it acted in good faith and had reasonable grounds for believing that it was compliant with the FLSA. *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (citations omitted). The NYLL currently provides for liquidated damages in the amount of actual damages unless an employer "proves a good faith basis for believing that its underpayment of wages was in compliance with the law." NYLL § 198(1-a). Prior to April 9, 2011, however, the statute only provided for 25% damages of any underpayment. *See* 2010 Sess. Law News of N.Y. Ch. 564 (S. 8380) (McKinney's). Because the amendment raising the available liquidated damages under the NYLL was not retroactive, a plaintiff may only recover 25% of actual damages under the NYLL for violations occurring before April 9, 2011. *See Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 144 (2d Cir. 2013).

Here, Plaintiff is entitled to liquidated damages under either standard, because Defendant— as a defaulting defendant—has failed to show that he had any good faith basis for believing that his underpayment to Plaintiff was justified. *See Garcia v. Chirping Chicken NYC, Inc.*, 2016 U.S. Dist. LEXIS 32750, at *46 (E.D.N.Y. Mar. 11, 2016) ("Since the defendants have defaulted and not demonstrated that they acted in good faith in failing to pay overtime to plaintiffs, the Court finds that plaintiffs are entitled to an award of liquidated damages under the FLSA.").

This Court recommends, however, that Plaintiff not receive liquidated damages under both statutes. He may be correct that both statutes provide for liquidated damages, and he may be correct that for a while courts in this district were divided over the ability to stack liquidated damages. *See Rana v. Islam*, 887 F.3d 118, 119 (2d Cir. 2018). Since he filed his memorandum of law, however, the Second Circuit has clarified that "because New York Labor Law does not call for awards of NYLL liquidated damages on top of liquidated damages under the FLSA, district courts may not award cumulative liquidated damages for the same course of conduct under both statutes." *Id.*[10]

Consistent with that holding, this Court recommends awarding liquidated damages pursuant to the NYLL in the amount of 100% of his underpaid wages, overtime, spread of hours and back payments for work that occurred on and after April 9, 2011, and in the amount of 25% for work that occurred before April 9, 2011. This results in an award of: $4,794.86 in liquidated damages for unpaid overtime premium from April 2011 to April 2012;[11] $3,562.50 in liquidated damages for the unpaid overtime premium from 2013 – 2014; and $5,877.75 in liquidated damages for the unpaid wages in the summer of 2015.

---

[10] The Second Circuit had earlier reached the same conclusion in a summary order. See *Chowdry v. Hamza Express Food Corp.*, 666 Fed. App'x 59, 61 (2d Cir. 2016). Under Second Circuit rules, that decision was not technically binding precedent, *see* Local Rule 32.1.1(a)), even though it was a highly persuasive authority, *see Bank v. Am. Home Shield Corp.*, 2013 U.S. Dist. LEXIS 29546, at *3 (E.D.N.Y. Mar. 4, 2013) (Block, J.) (Although [the opinion] is only a summary order, and not binding precedent, there is no reason to think that the circuit court would reach a different conclusion in this case.); *but see Anastasoff v. United States*, 223 F.3d 898, 900 (8th Cir. 2000) ("[W]e conclude that 8th Circuit Rule 28A(i), insofar as it would allow us to avoid the precedential effect of our prior decisions, purports to expand the judicial power beyond the bounds of Article III, and is therefore unconstitutional."), *vacated on other grounds by* 235 F.3d 1054 (8th Cir. 2000); Erica S. Weisgerber, *Unpublished Opinions: A Convenient Means to an Unconstitutional End*, 97 Geo. L.J. 621 (2009); Richard S. Arnold, *Unpublished Opinions: A Comment*, 1 J. App. Prac. & Process 219 (1999).

[11] This is calculated by taking the percentage of the unpaid overtime premium during that period that occurred from April 1 to April 8, 2011, yielding: ((8 / 365) * $4,875.00 * 0.25) + (((365 - 8) / 365) * $4,875.00 * 1) = $4794.86.

Therefore, this Court recommends awarding Plaintiff $14,235.11 in liquidated damages pursuant to NYLL § 198(1-a).

### E.  Written Notice and Wage Statement Violations.

Plaintiff also argues that Defendant is liable for failure to provide wage statements in accordance with NYLL § 195(3). Therefore, he believes that he is entitled to $5,000 for violation of § 195(3). *See* Mem. at 11; *see also* NYLL § 198(1-d) (providing for penalty for violations of NYLL § 195(3)).

Since an amendment that took effect on February 27, 2015, the penalty for a wage statement violation has been $250 for each work day of violation, not to exceed $5,000. *See* NYLL § 198 (1-d).  Thus, because Defendant has defaulted and admitted to Plaintiff's allegation that he violated NYLL § 195(3) from July to September 2015—i.e., somewhere between 32 and 91 days— this Court recommends awarding the maximum of statutory damages to Plaintiff for a total of $5,000 under NYLL § 198(1-d).[12]

### F.  Retaliation.

Under the FLSA, a allow plaintiff may be awarded such legal or equitable relief as may be appropriate to effectuate the purposes of the law's anti-retaliation provisions, and courts "have held that compensatory damages for emotional distress and punitive damages are both appropriate remedies under [FLSA] Section 216(b)." *Solis v. SCA Rest. Corp.*, 938 F. Supp. 2d 380, 403-04 (E.D.N.Y. 2013) (internal citations omitted); *see also Greathouse v. JHS Sec. Inc.*, 2015 WL 7142850, at * 3 (S.D.N.Y. Nov. 13, 2015), *adopted by* 2016 WL 4523855 (S.D.N.Y. Aug. 29, 2016) (concluding that "in light of the FLSA's evident purpose to fully compensate victims of

---

[12] Damages for wage statement violations are not subject to liquidated damages under the NYLL. *Guaman v. Krill Contracting, Inc.*, 2015 WL 3620364, at *10 (E.D.N.Y. June 9, 2015).

retaliation," emotional distress damages should be made available under the anti-retaliation provision of the law). Under this provision, Plaintiff asks for compensatory damages for time spent unemployed, compensatory damages for emotional distress, as well as punitive damages.

Regarding compensatory damages for lost earnings, Defendant requests $12,983.70. This Court recommends awarding slightly less, however. Plaintiff estimates that he was unemployed for 13 weeks. But after his constructive discharge due to Defendants' refusal to pay, Plaintiff went without a job from September 18, 2015 to December 13, 2015, a timespan of twelve weeks and two days. *See* Burns. Decl. ¶¶ 13, 21. He thus is entitled to $8,415.00[13] in lost regular wages and $3,825.00[14] in lost overtime for a total of $12,240.00.

Regarding emotional distress, Plaintiff requests $10,000. Again, this Court recommends a smaller award. Courts have given awards ranging from $5,000 - $30,000 for emotional distress awards under the FLSA and NYLL supported solely by a Plaintiff's self-described distress. *See*, *e.g.*, *Perez v. Jasper Trading*, 2007 WL 4441062, at **7–10 (E.D.N.Y Dec. 17, 2017); *Drice v. My Merchant Services*, 2016 WL 1266866, at *7 (E.D.N.Y. Mar. 4, 2016). A review of analogous cases reveals that an award of $5,000.00 is appropriate here. *See Jasper Trading*, 2007 U.S. Dist. LEXIS 103814, at *23-25 (awarding $5,000.00 in emotional distress to a plaintiff threatened with deportation).

Finally, Plaintiff requests $10,000.00 in punitive damages. This Court, however, recommends awarding $5,000 in punitive damages given the nature of the retaliation here. *See Jasper Trading, Inc.*, 2007 U.S. Dist. LEXIS 103814, at *27 (awarding $5,000.00 in punitive damages for threats of calling immigration officials).

---

[13] (40 * 12 * $17.00) + (7.5 * 2 * $17.00) = $8,415.00.

[14] 12 * 12.5 * $25.50 = $3,825.00.

This Court, therefore, recommends awarding a total of $17,240.00 in compensatory damages for retaliation, and $5,000.00 in punitive damages.

### G.  Prejudgment Interest.

Plaintiff seeks prejudgment interest calculated at a rate of 9% per annum on his New York state law claims pursuant to CPLR 5004. *See* Mem. at 15-16. It is well-settled that prejudgment interest is not available under the FLSA. *Fermin*, 93 F. Supp. 3d at 48 (citation omitted). However, the Second Circuit has held that liquidated damages and prejudgment interest do not serve the same purpose under the NYLL, so prevailing plaintiffs may recover both on NYLL claims. *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999).

Under New York law, when damages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." CPLR 5001(b); *see also Israel v. Benefit Concepts New York, Inc.*, 9 F. App'x 43, 45 (2d Cir. 2001) (failing to utilize a single reasonable intermediate date or to calculate from each date damages were incurred "affords the plaintiff a windfall, and hence penalizes the defendant, in contravention of the compensatory purpose of [CPLR] 5001") (citation omitted).

Although Plaintiff has not offered a suggestion, Plaintiff has requested that this Court use a reasonable intermediate date. This Court believes that June 25, 2013—the intermediate date from the beginning of his first period of employment on April 1, 2011 to the day of his last paycheck, September 18, 2015—is a reasonable intermediate date here.[15] This Court, therefore, recommends awarding Plaintiff prejudgment interest to be calculated with the principal amount of $14,315.25

---

[15] 1631 days elapsed from April 1, 2011 to September 18, 2015. Thus, the halfway point was 816 days after April 1, 2011, i.e. June 25, 2013.

at the rate of 9% per year, accruing from the date of June 25, 2013. As of the date of this report and recommendation, the calculation would be:

| Intermediate Date | Today's Date | Days of Interest Accrual | Annual Interest Rate | Unpaid Wages | Interest to Date |
|---|---|---|---|---|---|
| 25-Jun-13 | 17-Sep-18 | 1910 | 9% | $14,315.25 | $6,741.89 |

### H. Postjudgment Interest.

Because Plaintiff asks for an award of post-judgment interest, and because he is "entitled to post-judgment interest pursuant to 28 U.S.C. § 1961," *Zhi Fan Li v. Leung*, 2016 U.S. Dist. LEXIS 76817, at \*55 (E.D.N.Y. June 10, 2016), this Court recommends awarding post-judgment interest at the statutorily mandated rate equal to "the weekly average 1–year constant maturity Treasury yield . . . for the calendar week preceding . . . the date of the judgment," 28 U.S.C. § 1961(a).

### I. Attorneys Fees.

Plaintiff asks for $42,130.00 in attorneys' fees, comprised of: $14,525.00 for 41.5 hours of Partner Dana Lossia's time billed at the rate of $350.00 per hour; $23,375.00 for 85.00 hours of Associate Margaux Poueymirou's time billed at the rate of $275.00 per hour; $3,430.00 for 34.3 hours of three paralegal's time billed at $100.00 per hour; and $800.00 for 6.4 hours of a law clerk's time billed at the rate of $125.00. This Court finds that some of the requested rates are unreasonable and recommends reducing the requested award from $42,130.00 to $35,852.50.

Both the FLSA and the NYLL authorize the Court to award Plaintiff his reasonable attorney's fees. 29 U.S.C. § 216(b); NYLL § 198.  The same analysis applies to determine the fee under both statutes. *See Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 129 (E.D.N.Y. 2011). Courts "in this circuit assess fee applications using the 'lodestar method,' under which a

reasonable hourly rate is multiplied by a reasonable number of hours expended." *Gesualdi v. Mack Excavation & Trailer Serv., Inc.,* 2010 WL 985269, at *6 (E.D.N.Y. Feb. 12, 2010) (citations omitted), *adopted as modified by,* 2010 WL 985294 (E.D.N.Y. Mar. 15, 2010). The reasonable hourly rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . . where the district court sits." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany*, 522 F.3d 182, 190 (2d Cir. 2007) (internal quotation marks and citation omitted).

Here, Partner Dana Lossia rate of $350 per hour is eminently reasonable; she has thirteen years of experience and Courts have previously approved of rates ranging from $200 to $450 for partners.  *Ferrara v. CMR Contracting LLC*, 848 F. Supp. 2d 304, 313 (E.D.N.Y. 2012); *see also Bond v. Welpak Corp.*, 2017 WL 4325819, **4–5 (E.D.N.Y. Sept. 26, 2017) (awarding attorney with 13 years of litigation experience $350/hour). This Court recommends awarding $14,525.00 for her billed fees.

However, this Court finds that the rate of $275.00 per hour for Margaux Poueymirou's is unreasonable given that she graduated in 2015. *See Gomez v. El Rancho De Andres Carne De Tres Inc.*, 2014 U.S. Dist. LEXIS 45580, at *33 (E.D.N.Y. Mar. 11, 2014), *adopted by* 2014 U.S. Dist. LEXIS 43988 (E.D.N.Y. Mar. 31, 2014) (awarding $175 per hour for an associate practicing for approximately 3 years in FLSA- and NYLL-based matter); *Jemine v. Dennis*, 901 F. Supp. 2d 365, 384 (E.D.N.Y. 2012) (finding hourly rate of $150 reasonable for junior associate with two years of experience practicing law); *see also Rios v. Louya Corp.*, 2015 U.S. Dist. LEXIS 138507, at *10 (S.D.N.Y. Oct. 8, 2015) ("Courts typically award rates in the range of $125-$215 to associates with three years of experience or less."); *Black v. Nunwood, Inc.*, 2015 U.S. Dist. LEXIS 56609, at *16 (S.D.N.Y. Apr. 30, 2015) ($200 per hour for associate with three years of experience and

- 23 -

$150 for one year of experience in FLSA- and NYLL-based matter). Thus, this Court recommends awarding a rate of $215 per hour for Margaux Poueymirou's 85 hours, for a total of $18,275.00.

Likewise, this Court finds that $100.00 for paralegals and $125.00 for law clerks is not a reasonable rate. Paralegals and preadmission associates typically receive an hourly rate of $75 in this district for these types of cases. *See, e.g., Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 52 (E.D.N.Y. 2015); *Gora v. Acer Restorations LLC*, 2014 WL 10537433, at *7 (E.D.N.Y. Oct. 8, 2014); *Jean v. Auto & Tire Spot Corp.*, 2013 WL 2322834, at *7 (E.D.N.Y. May 28, 2013); *Banasiewicz v. Olympia Mech. Piping & Heating Corp.*, 2012 WL 4472033, at *8 (E.D.N.Y. Aug. 31, 2012),  *adopted by*  2012 WL 4473074 (E.D.N.Y. Sept. 26, 2012). Thus, this Court recommends an hourly rate of $75 for the 40.7 hours of law clerk and paralegal time spent on this case for a total award of $3,052.50.

Thus, this Court recommends awarding $35,852.00 in reasonable attorneys' fees in total.

### J.  Costs.

Plaintiff asks for $4,016.29 in costs, comprised of: $2,903.25 for Westlaw research; $485.00 in filing fees; $17.49 in unspecified outside services; $207.00 for process servers; $13.30 in PACER fees; $107.13 in Telephone and Fax fees; $46.70 in postage; and $236.42 in Lexis Nexis research. *See* Lossia Aff. Ex. 2.

A prevailing plaintiff in an action under the FLSA and NYLL is entitled to recover costs from the defendant. *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). That includes costs "relating to filing fees, process servers, postage, and photocopying are ordinarily recoverable." *Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008) (citation omitted). Furthermore, electronic "research costs are 'compensable as attorneys' fees and may be awarded . . . where the charges are not already accounted for in the attorneys'

hourly rates." *Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 212 (E.D.N.Y. 2007) (citation omitted).

By requesting compensation for electronic research costs, Plaintiffs have represented that the fees are not reflected in the attorneys' hourly rates, and this Court accepts that representation. *Accord Hyeon Soon Cho v. Koam Med. Servs. P.C.*, 524 F. Supp. 2d 202, 212 (E.D.N.Y. 2007).

Nevertheless, the total costs requested by Plaintiff here are unreasonable when compared to costs awarded in similar cases. *See*, *e.g.*, *Collado v. DonnyCarney Rest. L.L.C.*, 2015 U.S. Dist. LEXIS 104728, at *33 (S.D.N.Y. July 24, 2015) (awarding $1,376.59); *Drozd v. Vlaval Constr., Inc.*, 2011 U.S. Dist. LEXIS 156415, at *66-67 (E.D.N.Y. Oct. 18, 2011) (awarding $1,405.34 in costs). It appears that the source is the amount of research fees, which exceed the complexity and length of this case. *See*, *e.g.*, *Koam Med. Servs. P.C.*, 524 F. Supp. 2d at 212 (reducing research costs from $25,791.61 to $5,000.00 for a case that required hundreds of hours of attorney time). Thus, this Court recommends reducing the research fees by half, yielding an award of costs for research in the amount of $1,569.84[16] and a total award of $2,446.46.

## CONCLUSION

For the reasons articulated above, this Court recommends entering judgment against Defendants and entering an award of $55,790.36, comprised of (1) $5,877.75 in unpaid straight and overtime wages for the summer of 2015; (2) $8,437.50 in unpaid overtime premium for April 2011 to March 2012 and for November 2013 to July 2014; (3) nothing in unpaid spread-of-hours compensation; (4) $5,000.00 in wage statement damages; (5) $12,240.00 in compensation for lost earnings due to retaliation; (6) $5,000.00 in compensation for emotional distress due to retaliation; (7) $5,000.00 in punitive damages for the retaliation; (8) and $14,235.11 in liquidated damages.

---

[16] ($2,903.25 + $236.42) / 2 = $1,569.84.

This Court also recommends awarding prejudgment interest on a principal amount of $14,315.25 accruing from June 25, 2013 until the day judgment is entered at the rate of 9% per year, as well as postjudgment interest calculated pursuant to 28 U.S.C. § 1961(a). As of today, the prejudgment interest accrued is $6,741.89. Finally, this Court recommends awarding $35,852.50 in attorneys' fees and $2,446.46 in costs.

Plaintiff is hereby ordered to serve a copy of this report and recommendation on Defendants at their last known addresses within five business days.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985). Responses to any objections shall be due fourteen (14) days from service of the objection. *See* Fed. R. Civ. P. 72(b)(2).

**SO ORDERED.**

                                              /s/ Steven L. Tiscione
                                              Steven L. Tiscione
                                              United States Magistrate Judge
                                              Eastern District of New York

Dated: Brooklyn, New York
       September 17, 2018

- 26 -