UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL BURNS,

                    Plaintiff,

      v.

KELLY ENTERPRISES OF STATEN ISLAND,
LLC, NURNBERGER CORPORATION, and
ROBERT KELLY,

                    Defendants.
------------------------------------------------------------X

**DECISION & ORDER**
16-CV-6251 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 13, 2019, the defendants in the above-captioned action filed a motion for an order to show cause and accompanying memorandum of law in support of its motion seeking to vacate their default pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. *See* Def.'s Mot. for Order to Show Cause ("Def. Mot."), ECF No. 47; Def. Mem. of Law in Supp. or Mot. to Vacate J. ("Def. Mem."), ECF No 47-1. For the reasons discussed below, the defendants' motion to vacate judgment is DENIED.

## BACKGROUND

On November 10, 2016, Michael Burns ("Plaintiff" or "Burns") filed a complaint against Kelly Enterprises of Staten Island, LLC; Nurnberger Corporation d/b/a Nurnberger Bierhaus; and Robert Kelly (collectively, "Defendants") alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). *See* Compl, ECF No. 1. Defendants failed to respond to Plaintiff's complaint. On February 23, 2017, Plaintiff requested a certificate of default as to Defendants for their failure to appear in or otherwise defend this action. *See* Pl.'s Request for Certificate of Default, ECF No. 12. The Clerk of Court filed certificates of default as to each defendant on February 24, 2017. *See* ECF Nos. 13-15.

On April 17, 2017 Plaintiff filed a motion for default judgment. *See* Mot. for Default J., ECF No. 18. The Court held a default judgment hearing on June 14, 2017 at which Defendants

did not appear, and by that time, Defendants had yet to file any responsive pleadings or notice any attorney appearances. *See* June 14, 2017 Minute Entry. The Court granted the motion for default judgment and referred the matter to Magistrate Judge Steven Tiscione for an inquest hearing to determine the total amount of damages owed to Plaintiff. *See* June 26, 2017 Order, ECF No. 26. The Court adopted Magistrate Judge Tiscione's recommendation as to damages, fees, and costs on November 13, 2018. *See* Report & Recommendations, ECF No. 37; *See* Order Adopting Report & Recommendation, ECF No. 42. The Clerk of Court entered judgment against Defendants on November 14, 2018 in the amount of $101,05.94 plus post-judgment interest calculated pursuant to 28 U.S.C. § 1961(a). *See* Clerk's Judgment, ECF No. 44.

Defense counsel first appeared in this action on March 19, 2019. *See* Notice of Appearance, ECF No. 46. On May 13, 2019, Defendants filed a motion to vacate default judgment pursuant to Rule 60(b)(1) of the Federal Rules of Civil Procedure.[1] Defendants also requested temporary relief restraining and enjoining Plaintiff from encumbering any of Defendants' property. Plaintiff filed a response in opposition to Defendants' motion on June 4, 2019, *see* Mem. in Opp'n to Def.'s Mot. to Vacate J. ("Pl. Mem."), ECF No. 51, and Defendants filed a reply in further support of their motion on June 11, 2019, *see* Reply in Supp. of Def.'s Mot. to Vacate J., ECF No. 55. The Court held a hearing on the motion on June 18, 2019, at which the Court heard oral argument and the testimony of both Plaintiff and defendant Robert Kelly ("Kelly"), the founder and business owner of Nurnberger Bierhaus. *See* June 18, 2019 Minute Entry.; *see also* June 18, 2019 Hearing Tr. ("Tr.").

---

[1] In their memorandum of law, Defendants reference Rule 60(b)(2) rather than Rule 60(b)(1). Def. Mem. at 3. Rule 60(b)(2) permits relief from final judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)" whereas Rule 60(b)(1) allows relief from final judgment due to "mistake, inadvertence, surprise, or excusable neglect." Defendants' motion to vacate judgment is thus properly viewed as a motion under Rule 60(b)(1).

2

## APPLICABLE LAW

Rule 60(b) is "a mechanism for 'extraordinary judicial relief'" to be invoked only upon a showing of "'exceptional circumstances.'" *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994)); *see also Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986). "The decision whether to grant a party's Rule 60(b) motion is committed to the 'sound discretion' of the district court." *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quoting *In re Emergency Beacon Corp.*, 666 F.2d 754, 760 (2d Cir. 1981)).

Under Rule 60(b)(1), a court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect." In ruling on a Rule 60(b)(1) motion to vacate default judgment, a district court must consider three factors: "(1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense; and (3) whether and to what extent, vacating the default will cause the nondefaulting party prejudice." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-67 (2d Cir. 2004) (internal quotation marks omitted) (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)). Although a court must consider each factor, "a default should not be set aside when it is found to be willful." *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 507 (2d Cir. 1991).

"A default is willful when the conduct is 'more than merely negligent or careless,' but is instead 'egregious and not satisfactorily explained.'" *Jaramillo v. Vega*, 675 Fed. App'x 76, 76-77 (2d Cir. 2017) (summary order) (quoting *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr.*, 779 F.3d 182, 186 (2d Cir. 2015)). Notably, bad faith is not a necessary predicate to a determination of willfulness. *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998).

## DISCUSSION

In the present action, the docket sheet lists no fewer than 17 separate affidavits of service upon Defendants, including the service of the summons and complaint. *See* ECF Nos. 5, 6, 7, 9, 11, 16, 17, 23, 24, 27, 32, 34, 36, 38, 41, 43, 45; *see also* Decl. of Dana E. Lossia ("Lossia Decl.") ¶ 3, ECF No. 52. Among these mailings were Plaintiff's notice of motion for default, Plaintiff's memorandum of law in support of motion for default judgment, a number of declarations, scheduling orders pertaining to the Court's hearing on Plaintiff's motion for default, and more. Lossia Decl. ¶ 3. Including subpoenas and notices of the issuance of subpoenas, Plaintiff sent at least 45 separate mailings to each Defendant concerning this litigation. *Id.* ¶ 4.

At the hearing, defendant Kelly testified he did not receive these mailings because he had a habit of discarding attorney mailings he believed to be junk mail. Tr. at 17-19. Kelly could not say he never received the mail Plaintiff sent to his place of business in connection with this action. *Id.* Rather, he reported he likely received the pertinent mailings and threw them away. *Id.* He was the only individual at the restaurant authorized to discard mail. *Id.* at 29-30.

Importantly, Plaintiff also sent the above-described documents to Nurnberger Bierhaus—the mailing address of record for all three of the defendants in this action—by certified mail and requested a return receipt. Lossia Decl. ¶ 3. All three certified mail receipts were returned to the office of Plaintiff's counsel with a signature. *Id.*; Tr. at 24-26. At the hearing, Kelly testified he "very seldom" received certified mail at his place of business. Tr. at 26. He further reported although he did not have protocols in place for the receipt of certified mail at his place of business, he and his employees would treat certified mail differently than mail deemed to be "junk mail." *Id.* at 26-28. Kelly also noted he had no reason to doubt his employee received service of process in connection with this action. *Id.* at 29.

Plaintiff's counsel also made numerous attempts to reach Defendants by phone to discuss the litigation. Counsel for Plaintiff placed at least four calls to Defendants' place of business between March 28, 2017 and April 10, 2017, spoke with an employee, left her name and phone number, and identified herself as Plaintiff's attorney. Lossia Decl. ¶ 6. Defendants did not return the calls. *Id.* Plaintiff's attorney also spoke over the phone with the attorney who represented Kelly in an underlying Department of Labor investigation and notified the attorney of the federal court litigation. *Id.*

Defendants' conduct in this action rises to the level of willfulness. First, Kelly has offered no plausible explanation as to how 45 separate mailings escaped his notice. Kelly's only purported explanation—that he may have discarded 45 separate pieces of mail due to his belief they were "junk mail" and thus took no notice of the lawsuit—is simply not credible. Even if this explanation were credible, it is unavailing. *See Lopez v. Mohammed*, 14-cv-4443, 2017 WL 4277154, at *9 (E.D.N.Y. Sept. 26, 2017) (Chen, J.) (finding the defendant's default was willful because the defendant admitted to regularly receiving mail at his place of business, and his employee received service). Having conceded he likely received the mailings and likely discarded them, Kelly's conduct goes beyond mere negligence or carelessness and evinces a conscious disregard for legal process.

Second, Kelly has offered no plausible explanation as to how multiple articles of certified mail—for which his employee signed at his place of business—escaped his notice. Again, the Court finds Kelly's purported explanation—that he likely discarded the certified mail—not credible. Indeed, Kelly conceded his employee, Mr. Currie, received the article of certified mail in question. Tr. at 28-29. Kelly submits no declaration from Mr. Currie either disputing his acceptance of service or explaining that he failed to bring the certified mail to Kelly's attention.

*Cf. Frost Belt Intern. Recording Enterprises v. Cold Chillin' Records*, 758 F. Supp. 131, 136 (S.D.N.Y. 1990) (Kram, J.) (concluding the defendant's failure to submit an affidavit from an individual with personal knowledge of the circumstances of its default precludes a finding of excusable neglect). Ultimately, a failure to acknowledge certified mail "is especially strong evidence that there was a deliberate decision made not to participate in [an] action." *Mason Tenders Dist. Council of Greater N.Y. v. WTC Contracting, Inc.*, 2011 WL 4348152 (S.D.N.Y. Sept. 16, 2011) (Cote, J.). Even if Kelly's statements were credible, his explanation demonstrates a disregard for legal process that goes beyond mere negligence or carelessness.

Third, Kelly claims he had no familiarity with the name Michael Burns because when Plaintiff worked for him, his name was Michael Lufrano. Tr. at 15-16. This claim is disingenuous at best and provides this Court further reason to believe his default was willful. Kelly also employed an individual by the name of Kimberly Burns, with whom Plaintiff was engaged to be married. *Id.* at 20-21, 33-34. Plaintiff affirmatively told Kelly he planned to take the name of his future wife. *Id.* at 34. At the very least, the name "Burns" was not new to Kelly: Kelly was aware Ms. Burns—his employee of ten years—and Plaintiff were engaged and ultimately planned to marry, and it would be plausible to conclude Plaintiff took his wife's surname. *Id.* at 21, 33.

Fourth, Defendants' willfulness can also be inferred from his delay in responding to the default judgment. *See Lopez*, 2017 WL 4277154, at *10 (inferring willful default from the defendant's two-month delay in initiating his motion to vacate judgment). At latest, Kelly avers he learned of this action on March 5, 2019. Aff. of Robert Kelly ¶¶ 8-9, ECF No. 47-2. Yet Defendants did not file the instant motion until 69 days later on May 13, 2019. *See* Def. Mot. The delay with which Defendants have pursued vacatur in this case, despite their receipt of

numerous notices regarding the lawsuit and default proceedings, support the Court's conclusion Defendants knowingly chose to ignore the summons and complaint until well after it entered default judgment. *See Lopez*, 2017 WL 4277154, at *10. Indeed, it was not until bank tellers informed Kelly that his bank account had been frozen as a result of this action that he chose to partake in it. *See* Tr. at 20-21.

Fifth, Defendants were aware of the likelihood Plaintiff would initiate a civil lawsuit against them and would have expected mailings in connection with the dispute. Representatives of the Department of Labor held a conference with Kelly on December 7, 2015, and they explained to him they observed overtime wage violations. *See* Burns Decl. Ex. 3 at 4. Kelly retained counsel in connection with this underlying Department of Labor investigation. *Id.* at 6. As noted above, counsel for Plaintiff spoke both to the attorney Kelly retained in connection with the investigation and to representatives from the restaurant regarding the present action. It would be far from a stretch to presume at least one of these messages were ultimately relayed to Kelly, their intended recipient, prior to the entry of judgment. Notably, Kelly did not secure affidavits from either his former attorney or his employee demonstrating or even suggesting otherwise.

Defendants cite Kelly's participation in the prior Department of Labor investigation as evidence he would not have defaulted in this matter had he been aware of it. *See* Def. Mem. at 6-7. Although prior participation in an administrative action can suggest a default was not willful, *see Simmons v. Sea Gate Ass'n*, 12-cv-4949, 2013 WL 5774594, at *5 (E.D.N.Y. Oct. 224, 2013) (Kuntz, J.), Department of Labor notes from January 2016 reveal Kelly was non-responsive throughout the underlying investigation. Burns Decl. Ex. 3 at 6. Ultimately, "a demand letter was sent to [Kelly's attorney] giving him one more opportunity to agree and pay the back wages [and Kelly] . . . refused to pay any back wages." *Id.*

7

Kelly also cites illness as a factor contributing to Defendants' default. But "illness alone is not a sufficient basis for setting aside a judgment under Rule 60(b)(1)," particularly on this record. *See Carcello v. TJX Companies, Inc.*, 192 F.R.D. 61, 64 (D. Conn. 2000) (Nevas, J.).

Ultimately, the Court rejects Defendants' denials regarding his service and awareness of this lawsuit. The Court is "persuaded . . . [Defendants] made a strategic decision and deliberately chose not to appear." *Simmons*, 2013 WL 5774594, at *5. The Court therefore finds Defendants knowingly failed to answer the Complaint and respond to the motion for default, thereby demonstrating willfulness. At the very least, Defendants' conduct in purportedly discarding unread legal notices, particularly those sent by certified mail, was grossly negligent, if not reckless. This is not a case of "good faith mistake." *See Swarna v. Al-Awadi*, 622 F.3d 123, 142-43 (2d Cir. 2010) (finding defendants' default was in good faith because it was based on a mistaken belief they did not need to answer the complaint). Rather, Defendants' conduct in this action is both egregious and not satisfactorily explained.

After careful consideration of all three factors pertinent to Defendants' motion to vacate, the Court finds they weigh against vacating the default judgment in this action. The Court has considered both Defendants' defenses and prejudice to the non-defaulting party and finds they do not outweigh Defendants' willful default, particularly given "the well-established rule that a default should not be set aside when it is found to be willful." *Kass v. City of New York*, 14-cv-7505, 2015 WL 8479748, at *4 (S.D.N.Y. Dec. 2, 2015) (Carter, J.) (citing *Action S.A.*, 951 F.2d at 507); *see also Belizaire v. RAV Investigative & Sec. Servs.*, 310 F.R.D. 100, 106 (S.D.N.Y. 2015) (Oetken, J.) (denying a motion to vacate although the defendant presented evidence of facts that would have constituted a valid defense and there would have been little prejudice to the plaintiff beyond delay because these factors were outweighed by the defendant's willfulness).

## CONCLUSION

For the foregoing reasons, Defendants' motion to vacate, ECF No. 47, is hereby DENIED.

**SO ORDERED.**

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: July 22, 2019
    Brooklyn, New York